UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION, AND ANNUITY FUNDS
AND THE TRUSTEES OF THE LOCAL
1010 APPRENTICESHIP, SKILL IMPROVEMENT
AND TRAINING FUND,

        Plaintiffs,      REPORT AND
                     RECOMMENDATION
  -against-            22 CV 3757 (ENV)(RML)

REGIMENTAL CONTRACTING, LLC,

        Defendant.
----------------------------------------------------------------X
LEVY, United States Magistrate Judge:

  By order dated January 20, 2023, the Honorable Eric N. Vitaliano, United States District Judge, referred plaintiffs' motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motion be granted.

## BACKGROUND AND FACTS

  Plaintiffs, Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds and the Trustees of the Local 1010 Apprenticeship, Skill Improvement and Training Fund (the "Funds" or "plaintiffs") brought this action on June 27, 2022, under sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to collect delinquent employer contributions to employee benefit plans. (Complaint, dated June 27, 2022 ("Compl."), Dkt. No. 1, ¶ 1.) The Funds are employer and employee trustees of multiemployer labor-management trust funds

organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3). (Compl. ¶ 4.)  Defendant Regimental Contracting, LLC ("defendant" or "Regimental") is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business at 80 Urban Avenue, Westbury, New York and is engaged in the construction business.  (Id. ¶ 5.)  Defendant is an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.  (Id.)

Plaintiffs allege that defendant was a party to, or manifested an intention to be bound by, a collective bargaining agreement (the "CBA") with the Highway, Road and Street Construction Laborers Local Union 1010 ("the "Union").  (Id. ¶ 6; see also Declaration of Keith Loscalzo, dated Aug. 24, 2022 ("Loscalzo Decl."), Dkt. No. 18, ¶ 5; Collective Bargaining Agreement, annexed as Ex. A to the Loscalzo Decl., Dkt. No. 18-1.)  The CBA requires defendant to pay contributions to the Funds and related entities on behalf of which the Funds act as collection agents, based on the rates specified in the CBA in connection with all work performed by its employees within the trade and geographical jurisdiction of the Union ("Covered Work").  (Compl. ¶ 7; see also Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, dated Aug. 29, 2022 ("Pls.' Mem."), Dkt. No. 22, at 2; Loscalzo Decl. ¶ 14; Collective Bargaining Agreement, Art. IX, § 1.)  The CBA requires employers to submit all benefit contributions, union assessments, and dues check-offs to the Funds per a "one-check" system.  (Compl. ¶ 9.)  Additionally, pursuant to the CBA and the underlying trust agreements, defendant is bound by the terms of a Policy for Collection of Delinquent Fringe Benefit Contributions ("Collection Policy").  (Compl. ¶¶ 10-12; see also Declaration of Joseph Montelle,

dated Aug. 29, 2022 ("Montelle Decl."), Dkt. No. 19, ¶ 8; Collection Policy, annexed as Ex. D to the Montelle Decl., Dkt. No. 19-2.)

At the time this action was commenced, plaintiffs alleged that defendant had failed to report the number of hours of Covered Work performed by each of its employees for the period of at least February through April 2022. (Compl. ¶ 21; Montelle Decl. ¶ 14.) Plaintiffs further alleged that Regimental failed to remit contributions of $89,655.29 and union assessments of $4,243.07 to the Funds for January 2021 and July 2021 through January 2022. (Compl. ¶ 22.) Plaintiffs also alleged that defendant owed interest on late payments of contributions for October 2018 through December 2018, March 2019, April 2019, June 2019, August 2019, June 2020, September 2020, November 2020 through April 2021, and June 2021 beyond their respective due dates, thereby incurring late payment interest in the total amount of $2,918.44. (Id. ¶ 23.)

To date, the court has received no communication from defendant. Accordingly, the Clerk of the Court entered a certificate of default against defendant. (Certificate of Default, dated Aug. 4, 2022, Dkt. No. 10.) Plaintiffs filed their motion for default judgment on August 29, 2022. (Motion for Default Judgment, dated Aug. 29, 2022, Dkt. No. 17.) Judge Vitaliano referred plaintiffs' motion to me for report and recommendation. (Order, dated Jan. 20, 2023.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear

3

or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  Id. 55(b)(2).  To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit.  Here, plaintiffs have filed an affidavit of a licensed process server attesting that defendant was served by delivering copies of the summons and complaint to the New York Secretary of State pursuant to Rule 4(h)(1)(b) of the Federal Rules of Civil Procedure and New York Business Corporation Law § 304(a).  (See Affidavit of Edward J. Bowmaker, sworn to June 29, 2022, Dkt. No. 6.)  Plaintiffs have also demonstrated that they served the Motion for Default Judgment and accompanying submissions on defendant in compliance with Local Rule 55.2(c).  (See Declaration of Service of Adrianna R. Grancio, Esq., dated Aug. 30, 2022, Dkt. No. 23.)  Defendant has failed to appear, respond to the complaint, or respond to the plaintiffs' application for default.  The grounds for default are therefore clearly established and I recommend entering judgment by default.

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  In civil actions, when a party fails to appear after having been given notice, the court normally has justification for entering default.  Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984).  However, upon default, allegations pertaining to damages are not deemed admitted.  Greyhound, 973 F.2d at 158.  The movant must establish its entitlement to the recovery of damages.  Id.  The court may conduct a hearing or rely on affidavits or other documentary evidence to determine damages.  See FED. R. CIV. P. 55(b)(2).

Under section 515 of ERISA, defendant is required to make contributions to the Funds in accordance with the terms of the CBA.  See 29 U.S.C. § 1145.  In an ERISA action

4

brought by a fiduciary for or on behalf of a benefit plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan as:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>   (i) interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Id. § 1132(g)(2). In addition, the LMRA authorizes federal lawsuits "for violation of contracts between an employer and labor organization representing employees in an industry affecting commerce." Id. § 185(a). Defendant's failure to remit dues to the Union and contributions to the Funds is in violation of the CBA and underlying trust agreements, and as a matter of contract law and under Section 301 of the LMRA, plaintiffs are entitled to damages on behalf of the Funds and the Union. See Brown v. C. Volante Corp., 194 F.3d 351, 354 (2d Cir. 1999) (holding that employee benefit plans are permitted to bring suit under Section 301 of the LMRA to collect delinquent contributions, as well as interest).

Based on remittance reports submitted by Regimental to the Funds, the estimation protocol provided for in the Collection Policy, and the late payment interest report generated by the Funds' third-party administrator Zenith American Solutions Inc. ("Zenith"), plaintiffs seek: (1) delinquent contributions and unpaid union dues in the amount of $149,229.92; (2) interest thereon totaling $7,973.17; (3) liquidated damages on the delinquent contributions in the amount of $14,922.99; (4) union assessments and dues check-offs in the amount of $7,136.63; (5) late payment interest totaling $2,918.44; and (6) attorney's fees and costs in the amount of $5,810.57. (Pls.' Mem. at 2.) I will address each of plaintiffs' requests in turn.

1. Unpaid Contributions and Union Dues

Plaintiffs seek an award of $149,229.92 in delinquent contributions for January 2021 and July 2021 through March 2022[1] and $7,136.63 in unpaid union assessments and dues check-offs. (Pls.' Mem. at 2, 4; see also Compl. ¶ 22; Declaration of Philip Wilson, dated Aug. 26, 2022 ("Wilson Decl."), Dkt. No. 20, ¶ 9.) The CBA requires defendant to submit reports detailing the number of hours of work performed by its employees and the corresponding benefit contributions. (Loscalzo Decl. ¶ 13.) Plaintiffs retain Zenith as a third-party administrator of the Funds to monitor the payment of benefit contributions and union assessments. (Pls.' Mem. at 2; Wilson Decl. ¶¶ 6-8.) Plaintiffs provided the court with a copy of the discrepancy report generated by Zenith for all periods relevant to this action. (Discrepancy Report, attached as Ex. H to the Wilson Decl., Dkt. No. 20-1.) Based on the remittance reports and payments submitted by defendant, Zenith concluded that defendant failed to remit contributions of $122,838.48 and union assessments of $5,920.57 to the Funds for January 2021 and July 2021 through March 2022. (Wilson Decl. ¶ 9; see also Discrepancy Report.)

Furthermore, defendant failed to submit reports detailing the number of hours of Covered Work performed by its employees for the period May 2022 through June 2022. (Pls.' Mem. at 4; Montelle Decl. ¶¶ 15-16; Wilson Decl. ¶ 10.) Pursuant to the Collection Policy, the Funds estimated the amount of delinquent contributions due by using reports actually submitted by defendant for the last three months for which payments were submitted. (Pls.' Mem. at 4; Montelle Decl. ¶ 16.) Using this estimation protocol, the Funds estimate that defendant owes the

---

[1] At the time this action commenced, defendant had only submitted unfunded reports through January 2022. (Pls.' Mem. at 4.) Since the action has been pending, defendant has supplied the reports for February and March 2022. (Id.)

Funds contributions of $26,391.44 and union assessments of $1,216.06 for the period of May 2022 through June 2022. (Pls.' Mem. at 4; Montelle Decl. ¶ 18.)

Having reviewed the declarations and exhibits attached to the motion for default judgment, I find that Zenith's report and the estimations made pursuant to the Collection Policy sufficiently establish the amount defendant owes to plaintiffs in unpaid contributions and unpaid union assessments and dues check-offs. Therefore, I respectfully recommend that plaintiffs be awarded $149,229.92 in unpaid contributions and $7,136.63 in unpaid union dues.

2. Interest on Unpaid Contributions

Plaintiffs seek interest on the unpaid contributions. Pursuant to section 502 of ERISA, plaintiffs are entitled to interest on the delinquent contributions calculated at the rate provided by the plan. See 29 U.S.C. § 1132(g)(2)(E). The CBA and Collection Policy provide that interest on the unpaid contributions and unpaid dues are to be calculated at the rate of ten percent per annum from the date that each monthly contribution was due. (Compl. ¶ 24; Loscalzo Decl. ¶ 17; Montelle Decl. ¶¶ 12, 20; see also Collection Policy.) I have reviewed the calculation tables provided by plaintiffs and find that they accurately reflect the interest due through August 29, 2022. (See Interest and Liquidated Damages Calculations, attached as Ex. G to the Montelle Decl., Dkt. No. 19-5; Discrepancy Report.) However, since interest continues to accrue on all outstanding principal through the date of the entry of judgment, I cannot recommend a specific interest award at this time. Instead, I respectfully recommend that interest be awarded on the unpaid principal at the rate of ten percent per annum, through the date of judgment.

### 3. Liquidated Damages

Plaintiffs seek $14,922.99 in liquidated damages for the total amount of delinquent contributions. (See Pls.' Mem. at 2.) "Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." Sullivan v. Marble Unique Corp., No. 10 CV 3582, 2011 WL 5401987, at *6 (E.D.N.Y. Aug. 30, 2011) (citing 29 U.S.C. § 1132(g)(2)(C)), report and recommendation adopted, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011). Pursuant to the CBA and the Collection Policy, liquidated damages are to be calculated at a rate of ten percent of the amount of the delinquency. (Montelle Decl. ¶ 20; Collective Bargaining Agreement, Art. IX, § 5; Collection Policy, Art. II.)

Plaintiffs calculated liquidated damages based on the $149,229.92 in delinquent contributions for January 2021, July 2021 through March 2022, and May and June 2022.[2] (Pls.' Mem. at 4, 10; Montelle Decl. ¶¶ 12-13, 21-24; Interest and Liquidated Damages Calculations.) Having reviewed plaintiffs' calculations and supporting documentation, I respectfully recommend that plaintiffs be awarded the requested $14,922.99 in liquidated damages, which amounts to ten percent of the total unpaid contributions.

---

[2] Liquidated damages calculations should include the amount of delinquency at the time the action was commenced. See Iron Workers Dist. Council of W. New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2d Cir. 1995) ("[A]n employer cannot escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and costs simply by paying the delinquent contributions before entry of judgment in a § 1132(g)(2) action brought to recover delinquent contributions.").

4. <u>Interest on Late Contributions</u>

Plaintiffs also seek interest on the late payment of contributions for the periods of October through December 2018, March 2019, April 2019, June 2019, August 2019, June 2020, September 2020, November 2020 through April 2021, and June 2021 in the amount of $2,918.44. (Pls.' Mem. at 11; Wilson Decl. ¶ 19; Interest Report, attached as Ex. J to the Wilson Decl., Dkt. No. 20-3.) Under Article II of the Collection Policy, if an employer fails to make contributions when due, the employer is "liable for the payment of delinquent Contributions with interest at the rate of ten percent (10%) per annum (calculated from the Due Date)." (Montelle Decl. ¶ 8; Collection Policy, Art. II, § 5.)

Zenith monitors late payment interest that accrues when employers pay benefit contributions beyond their due date. (Wilson Decl. ¶ 11.) Plaintiffs provided a Late Payment Interest Report which indicates the months for which contributions were paid late, the dates on which plaintiffs received the contributions, and the late payment charges that were assessed. (<u>Id.</u> ¶¶ 12-19; Interest Report.) Zenith calculated the late payment interest as follows: first, it counted the number of days that the contributions were paid late. (Wilson Decl. ¶ 17.) Then, the daily interest rate was calculated by multiplying the contribution amount due by the ten percent annual interest rate found in the CBA, which was then divided by the full year of 365 days. (<u>Id.</u>) Finally, the daily rate was applied to the number of days that the payment was late. (<u>Id.</u>) Using this method, Zenith calculated that defendant owed plaintiffs $2,918.44 in interest for the periods October through December 2018, March 2019, April 2019, June 2019, August 2019, June 2020, September 2020, November 2020 through April 2021, and June 2021. (<u>Id.</u> ¶ 19; Interest Report.)

9

Having reviewed plaintiffs' calculations and supporting documentation, I find that they are accurate. Accordingly, I respectfully recommend that plaintiffs be awarded at total of $2,918.44 in late payment interest.

5. Attorney's Fees and Costs

Finally, plaintiffs seek an award of attorney's fees and costs. (Pls.' Mem. at 12-14.) As the prevailing party, plaintiffs are entitled to an award of attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(2)(D). Plaintiffs' counsel seeks $5,333 in attorney's fees and $477.57 in costs. (Pls.' Mem at 14; Declaration of Adrianna R. Grancio, Esq., dated Aug. 29, 2022 ("Grancio Decl."), Dkt. No. 21, ¶¶ 14-15.)

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted). In performing this analysis, the court has "considerable discretion." Id. at 190. Claims for attorney's fees in the Second Circuit generally must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

To determine what constitutes a reasonable hourly rate, this court looks to the hourly rates that attorneys routinely charge for comparable work in the Eastern District of New York. Loc. No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Tr. Fund v. Crops Design Corp., No. 12 CV 4218, 2013 WL 5460871, at *6 (E.D.N.Y. Sept. 30, 2013). In this district, the prevailing hourly rates are generally "$200 to $450 for partners in law firms,

10

$200 to $325 for senior associates, $100 to $200 for junior associates . . . ." Noboa v. Quality Homes USA, Inc., No. 21 CV 7134, 2023 WL 35030, at *2 (E.D.N.Y. Jan. 4, 2023) (citation and quotation marks omitted); see also Perrone v. Amato, No. 09 CV 316, 2022 WL 595187, at *3 (E.D.N.Y. Feb. 27, 2022) (prevailing hourly rates "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience."). "Courts have also recognized 'the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of the typical ranges.'" Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 20 CV 1980, 2021 WL 7908024, at *6 (E.D.N.Y. Jan. 4, 2021) (quoting Lubco Transp. Inc., 2017 WL 946297, at *4).

Plaintiffs have submitted time records that indicate the date, duration, and nature of the work performed by counsel. (Billing Records, annexed as Ex. N to the Grancio Decl., Dkt. No. 21-4.) Plaintiffs request a rate of $290 per hour for the 17.2 hours expended by Adrianna R. Gancio, Esq. (Grancio Decl. ¶ 10; Billing Records.) Additionally, plaintiffs request a rate of $115 for the 3 hours expended by the legal assistants on this case.[3] (Id. ¶ 11.) Ms. Grancio, an associate at Virginia & Ambinder, LLP ("V&A"), has been practicing law since 2016 and has "handled the prosecution of numerous ERISA collection actions." (Grancio Decl. ¶ 10.) I find the requested rate of $290 for Ms. Grancio to be reasonable considering the prevailing rates in this district for attorneys with comparable experience. See, e.g., Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. M. Vascellaro, Inc., No. 21 CV 4076, 2022 WL 17820119, at *11 (E.D.N.Y.

---

[3] The legal assistants on this case were Eva Keating ("EK" in the accompanying billing records), and Abigail Frankel ("AF" in the accompanying billing records). (Grancio Decl. ¶ 11 n.1; Billing Records).

11

Aug. 10, 2022) (finding a requested hourly rate of $285 reasonable for Ms. Grancio); Trs. of Loc. 813 Pension Trust Fund v. Rizzo Env't Servs. Corp., No. 19 CV 6622, 2020 WL 7249289, at *708 (E.D.N.Y. Oct. 31, 2020) (approving hourly rate of $325 for an experienced associate in ERISA default action), report & recommendation adopted, 2020 WL 7021595 (E.D.N.Y. Nov. 30, 2020); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a rate of $280 per hour reasonable for an associate in ERISA litigation).

I also find the requested rate of $115 for the work of the legal assistants to be reasonable. See, e.g., Finkel v. JCF Elec., Inc., No. 21 CV 3161, 2022 WL 3682834, at *4 (E.D.N.Y. Aug. 25, 2022) (finding $120 to be a reasonably hourly rate for the work of legal assistants); Finkel v. Firealarm Elec. Corp., No. 21 CV 3802, 2022 WL 1407239, at *12 (E.D.N.Y. Feb. 11, 2022) (approving a rate of $120 per hour for the work of legal assistants in an ERISA case).

Turning next to the reasonableness of time expended, I find that it was reasonable for counsel to devote 20.2 hours to this case. See, e.g., Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp., No. 20 CV 1832, 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022) (finding that 39.4 hours billed in a comparable case was "within the range of reasonable hours expended in similar ERISA cases involving default judgment"); Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 19 CV 2312, 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020), report and recommendation adopted, No. 19 CV 2312, 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020) (holding that 45.30 hours in a similar case was not excessive,

12

redundant, or unnecessary). Therefore, I respectfully recommend that plaintiff be awarded $5,333 in attorney's fees.

Plaintiffs also seek costs in the amount of $477.57. (Pls.' Mem. at 14; Grancio Decl. ¶ 15; Billing Records.) 29 U.S.C. § 1132(g)(2)(D) directs a court to award reasonable costs when "a judgment in favor of the plan is awarded." 29 U.S.C. § 1132(g)(2)(D). A plaintiff that prevails in an action under ERISA is entitled to "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12 CV 5646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08 CV 884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). Plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). In this case, costs include $402 for the filing fee, $75 for process server fees, and $0.57 for postage. (See Pls.' Mem. at 14; Billing Records.) I find that the requested costs are reasonable, and therefore recommend that plaintiffs be awarded $477.57 in costs.

## CONCLUSION

For the reasons explained above, I respectfully recommend that plaintiffs' motion for default judgment be granted and that plaintiffs be awarded: (a) $156,366.55 in unpaid contributions and unpaid union assessments and dues check-offs; (b) interest on the unpaid principal at the rate of ten percent per annum, through the date of judgment (c) $14,922.99 in liquidated damages; (d) $2,918.44 in late payment interest; (e) $5,333 in attorney's fees; and (f) $477.57 in costs. Any objection to this Report and Recommendation must be filed with the

13

Clerk of the Court within fourteen (14) days.  Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      February 27, 2023